# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ULC OIL AND GAS FIELD SERVICES, | Civil Action No. 14 - 72 |
| Plaintiff, | Judge Nora Barry Fischer |
| | Magistrate Judge Lisa Pupo Lenihan |
| v. | |
| EXCO RESOURCES (PA), LLC., | ECF No. 27 |
| Defendant. | |

## REPORT AND RECOMMENDATION

**I.     RECOMMENDATION**

It is respectfully recommended that Defendant's Motion to Dismiss Counts II, III and IV of Plaintiff's Amended Complaint (ECF No. 27) with prejudice be granted in part and denied in part. It is recommended that the motion be granted as to Counts II and IV, and denied as to Count III.

**II.    REPORT**

Currently before the Court for disposition is Defendant's Motion to Dismiss Counts II, III and IV of the Amended Complaint (ECF No. 27) pursuant to Federal Rule of Civil Procedure 12(b)(6). This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1332(a), as the parties are citizens of different states, *see* Notice of Removal at ¶¶10-11 (ECF No. 1), and the monetary damages sought to be recovered exceed $75,000, *see* Amended Compl. ¶21 and Ad damnum clause to Counts I, II & III (ECF No. 26). Venue in this District is proper under 28 U.S.C. §§1441(a) and 1446(a).

A.  **STATEMENT OF FACTS & PROCEDURAL HISTORY**

Plaintiff, ULC Oil & Gas Field Services ("ULC"), provides various goods and services associated with the Marcellus Shale gas and oil production. Am. Compl. ¶3. Defendant, EXCO Resources (PA), LLC ("EXCO"), is engaged in the business of exploration, development, and operation of oil and gas wells and in the production of oil and gas. *Id.* at ¶5. On January 5, 2011, the parties entered into a Master Service and Supply Agreement ("MSA") pursuant to which ULC agreed to perform various work and services for, and/or lease or sell goods, equipment or facilities to, EXCO and EXCO agreed to pay for said services and goods, equipment and/or facilities, within 30 days after acceptance of ULC's invoices. MSA at ¶¶ I & III, Ex. A to Am. Compl. (ECF No. 26-1).

From January 5, 2011 through February 21, 2012, ULC performed work and services for, and sold or leased goods, equipment or facilities to, EXCO and submitted various invoices for payment. Am. Compl. at ¶6. Although EXCO made payment on some of the invoices, ULC claims that EXCO has withheld payment on a number of invoices totaling $120,327.72, despite many attempts, both orally and in writing, to obtain payment. *Id.* at ¶¶6, 8, 15, 18-19, & 21. ULC claims that EXCO never informed it that the invoices were defective in any way or that it was disputing the invoices. *Id.* at ¶¶19-20. During this time, EXCO continued to call and request that ULC perform work and services. *Id.* at ¶13, 19.

Subsequently, ULC brought this action in Washington County Court of Common Pleas on October 15, 2013 against EXCO, who then removed the case to federal court on January 17, 2014 based on diversity of citizenship. On February 24, 2014, EXCO filed a Motion to Dismiss (ECF No. 7) ("First Motion to Dismiss") Count II of the Complaint, which set forth a claim for unjust enrichment, to which ULC filed a response (ECF No. 10). Thereafter, on March 24, 2014,

EXCO filed an Answer to Count I of the Complaint (breach of contract claim) and its affirmative defenses (ECF No. 12). After obtaining leave of court, ULC filed an Amended Complaint (ECF No. 23) on June 10, 2014, which sets forth additional allegations in support of the breach of contract (Count I) and unjust enrichment (Count II) claims, and adds two claims, one for the violation of the Pennsylvania Contractor and Subcontractor Payment Act, 73 P.S. §501 *et seq.* ("PCSPA") (Count III), and the other seeks a declaratory judgment (Count IV).[1] EXCO has moved to dismiss Counts II, III and IV of the Amended Complaint (ECF No. 27) ("Second Motion to Dismiss"), which is the subject of this Report and Recommendation. ULC has filed a response to this motion,[2] to which EXCO has filed a reply brief. As the motion is fully briefed, it is ripe for disposition.

B.  **LEGAL STANDARD**

Recently, the United States Court of Appeals for the Third Circuit aptly summarized the standard to be applied in deciding motions to dismiss filed pursuant to Rule 12(b)(6):

> Under the "notice pleading" standard embodied in Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must come forward with "a short and plain statement of the claim showing that the pleader is entitled to relief." As explicated in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), a claimant must state a "plausible" claim for relief, and "[a] claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Although "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), a plaintiff "need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Fowler*, 578 F.3d at 213 (quotation marks and citations omitted); *see also Covington v. Int'l*

---

[1] By Text Order dated June 24, 2014, the Court denied as moot the First Motion to Dismiss based on Plaintiff's filing of the Amended Complaint (ECF No. 23).
[2] Plaintiff has not, however, filed a brief in opposition to the Second Motion to Dismiss.

> *Ass'n of Approved Basketball Officials*, 710 F.3d 114, 117–18 (3d Cir.2013).

*Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014). In addition, the court of appeals emphasized that "[a]fter *Iqbal,* it is clear that conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss: 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Fowler*, 578 F.3d at 210 (quoting *Iqbal,* 129 S.Ct. at 1949).

Courts generally consider only the allegations of the complaint, attached exhibits, and matters of public record in deciding motions to dismiss. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted). Factual allegations within documents described or identified in the complaint may also be considered if the plaintiff's claims are based upon those documents. *Id*. A district court may consider these documents without converting a motion to dismiss into a motion for summary judgment. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

### C. DISCUSSION

#### 1. Unjust Enrichment Claim (Count II)

EXCO seeks to dismiss Count II of the Complaint, which sets forth a claim for unjust enrichment, on the basis that under Pennsylvania law, it is well established that where an express contract exists which governs the rights and liabilities of the parties, a claim for unjust enrichment is precluded. *See Schott v. Westinghouse Elec. Corp.,* 259 A.2d 443, 448 (Pa. 1969) ("[T]his Court has found the quasi-contractual doctrine of unjust enrichment inapplicable when the relationship between parties is founded on a written agreement or express contract."); *see also Hershey Foods Corp. v. Ralph Chapek, Inc.,* 828 F.2d 989, 999 (3d Cir. 1987) (citing

*Benefit Trust Life Ins. Co. v. Union Nat'l Bank,* 776 F.2d 1174, 1177 (3d Cir. 1985) (quoting *Schott*)). Here, as EXCO notes, Count I of the Amended Complaint contains a claim for a breach of the MSA, a copy of which is attached as an exhibit to the Amended Complaint. The MSA sets forth the rights and liabilities of ULC and EXCO regarding the goods and services provided by ULC to EXCO. Preamble, MSA at p. 1, Ex. A to Am. Compl. (ECF No. 26-1). In addition, in a provision entitled "Entire Agreement," the MSA expressly states:

> Unless the parties agree otherwise in a written agreement which specifically identifies this Agreement by date of execution and signatories, any services requested by [EXCO] and any goods, equipment or facilities purchased and/or leased by [EXCO] from [ULC] shall be provided by [ULC] under the terms of this Agreement. In the event of any conflict between this Agreement and any work order or purchase order, this Agreement shall control. This Agreement supersedes all other agreements, oral or written, previously entered into with respect to the subject matter contained in this Agreement and the transactions which it contemplates, and it contains the entire agreement of the parties, including without limitation all agreements with respect to warranties.

MSA, ¶XII at p. 11. Based on this language, EXCO submits that the MSA clearly forms the basis and governs the relationship of the parties, and ULC even admits as much in its response to the First Motion to Dismiss (ECF No. 10 at 3).[3] EXCO notes that all of the disputed invoices

---

[3] Specifically, ULC responded:
> Clearly, the parties were operating on a Master Services Agreement entered into between the parties which is the specific "contract" document that started the parties' relationship. But this document was not the sum total that defined the work that was done by ULC or the exact amount that ULC would be paid for the various projects ULC was assigned. The MSA only governed the rights and responsibilities between the parties when working together. On numerous occasions ULC was called out to do various projects at the behest of EXCO which were completed and invoiced. On all occasions work accomplished was followed by

5

relate to alleged services provided when ULC and EXCO were working together. Therefore, EXCO contends that ULC's unjust enrichment claim is precluded and should be dismissed with prejudice.

In response, ULC simply argues that (1) "alternative pleading at this stage of the proceedings is not irregular as briefed by Plaintiff in their original Brief[,]"[4] and (2) "Plaintiff had various dealings with the Defendants as evidenced by the estimates that were attached to the Amended Complaint." Pl.'s Resp. to Second Motion to Dismiss at ¶13(i) (ECF No. 32). Neither argument is convincing nor sufficient to circumvent the express language of the MSA or clearly established precedent.

Turning first to ULC's second argument, in an attempt to circumvent the express language of the MSA, Plaintiff attempts to show that the parties had various dealings outside the MSA by alleging in its Amended Complaint that the MSA merely "provided an outline of what was required as a contractor of EXCO before being recognized as available to work various sites[,]" *see* Am. Compl. ¶4, and has attached examples of two bid proposals it submitted to EXCO, *see* Ex. B to Am. Compl. (ECF No. 26-4). However, the express language of the MSA clearly contradicts the allegation that the MSA was only an "outline" of the parties' working relationship, as the MSA unequivocally states that it sets forth the rights and liabilities of ULC and EXCO regarding the goods and services provided by ULC to EXCO, that any services requested by EXCO and any goods, equipment or facilities purchased and/or leased by EXCO

---

submitted invoices with requisite sign-offs by the appropriate parties.

Pl.'s Resp. to First Motion to Dismiss at 3 (ECF No. 10 at 3).

[4] Plaintiff appears to be referring to its response to the First Motion to Dismiss (ECF No. 10), as it did not file a brief in opposition to the First Motion to Dismiss.

from ULC shall be provided by ULC under the terms of the MSA, that in the event of a conflict between the MSA and any work order or purchase order, the MSA will control, the MSA supersedes all other agreements (oral or written) previously entered into with regard to the subject matter of the MSA, and the MSA contains the entire agreement of the parties. MSA, Preamble & ¶XII.

It is well settled that where a claim is predicated on a written instrument that is attached as an exhibit to the complaint, the written instrument will control and courts are not required to accept as true any contradictory allegations in the complaint. *Bogie v. Rosenberg,* 705 F.3d 603, 609 (7th Cir. 2013) (citations omitted); *Pittsburgh League of Young Voters Educ. Fund v. Port Auth. of Allegheny Cnty.*, No. 2:06-cv-1064, 2007 WL 1007968, at *5 (W.D.Pa. Mar. 30, 2007) (citing *N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend,* 163 F.3d 449, 454 (7th Cir. 1998); *Dykes v. Se. Pa. Transp. Auth.,* 68 F.3d 1564, 1567 n. 3 (3d Cir. 1995)) (other citations omitted); *Mickel Drilling Partners ex rel. Mickel v. Cabot Oil & Gas Corp.,* No. 3:CV-11-0061, 2012 WL 4953081, at *8 (M.D.Pa. Oct. 16, 2012) (citing *Pittsburgh League of Young Voters Educ. Fund, supra*); *see also* Wright & Miller, 5A FED. PRAC. & PROC.: CIVIL 3D §1327, at 450-51 & n. 21 ("It appears to be well settled that when a disparity exists between the written instrument annexed to the pleadings and the allegations in the pleadings, the terms of the written instrument will control, particularly when it is the instrument being relied upon by the party who made it an exhibit."). In the case at bar, ULC attached the MSA to its Amended Complaint, and its breach of contract claim is predicated upon the MSA. Moreover, neither party is challenging the validity of the MSA. Therefore, the MSA controls here and the Court is not required to accept as true Plaintiff's allegation that that the MSA merely "provided an outline of what was

required as a contractor of EXCO before being recognized as available to work various sites."[5] Am. Compl. ¶4.

With regard to the bid proposals, ULC alleges: "During [2011 to February 21, 2012] the Plaintiff also made various bid proposals to obtain employment on job sites to the Defendant. Two of those bid proposals by way of example are attached as Exhibit 'D'. Those jobs were specifically by contract with a specific price being agreed upon prior to commencement of operations. The others were not." Am. Compl. ¶7. Significantly, however, ULC does not allege in the Amended Complaint that these bid proposals were accepted by EXCO, that ULC performed the work described in the proposals, or that the bid proposals relate to any of the unpaid invoices that are at issue here. As such, the bid proposals are irrelevant to both the breach of contract claim and the unjust enrichment claim.

As to ULC's other argument—that alternative pleading at this stage of the proceedings is not irregular—it too lacks merit. In its response to the First Motion to Dismiss, ULC submits that Pennsylvania courts have continually recognized that a litigant may advance alternative or conflicting theories of recovery, including causes of action for breach of contract and quantum meruit/unjust enrichment. However, the cases ULC cites in support of this proposition are distinguishable factually. *See e.g., Lugo v. Farmers Pride, Inc.*, 967 A.2d 963 (Pa. Super. Ct. 2009) (existence of valid contract at issue; applied Pennsylvania Rules of Civil Procedure); *Halstead v. Motorcycle Saftey Fdn. Inc.*, 71 F.Supp. 2d 455 (E.D.Pa. 1999) (plaintiff not a party to contract and complaint did not allege defendants were unjustly enriched at plaintiff's

---

[5] This allegation also conflicts with ULC's prior statement in its response to the First Motion to Dismiss: "The MSA only governed the rights and responsibilities between the parties when working together." *See* Pl.'s Resp. to First Mot. to Dismiss at 3 (ECF No. 10 at 3). As EXCO points out in its supporting brief at 8 n.4 (ECF No. 28), all of the disputed invoices relate to alleged services when ULC and EXCO were working together.

expense); *Atlantic Paper Box Co. v. Whitman's Chocolates*, 844 F.Supp. 1038 (E.D.Pa. 1994) (issue involved whether plaintiff could proceed on promissory estoppel claim if claim was not barred by statute of frauds, making only passing reference to courts allowing plaintiffs to pursue alternative theories of recovery based on breach of contract and unjust enrichment without any discussion or analysis).

Although some case law supports allowing a plaintiff to plead, in the alternative, an unjust enrichment claim, the majority of courts that have allowed it did so only in limited circumstances, such as where the contract at issue only encompassed a part of the relationship between the parties, *see United States v. Kensington Hospital*, 760 F.Supp. 1120, 1135 (E.D.Pa. 1991), or where defendants failed to produce the alleged contract or other evidence to show that an adequate remedy existed under the law of contracts, *see United States v. Geri-Care,* Civ. A. No. 89-5720, 1990 WL 9463, *3 (E.D.Pa. Feb. 2, 1990), *vacated in part on other grounds on reconsideration*, 1990 WL 39301 (E.D.Pa. Mar. 30, 1990), or where the validity or enforceability of the contract was at issue, *see, e.g., Montanez v. HSBC Mortg. Corp. (USA),* 876 F.Supp. 2d 504, 516 (E.D.Pa. 2012) (granting motion to dismiss unjust enrichment claim because it was undisputed that mortgage contract was valid and enforceable) (listing cases which hold that plaintiff may plead unjust enrichment in the alternative only where the parties dispute whether a valid, enforceable written contract exists); *AmerisourceBergen Drug Corp. v. Allscripts Healthcare, LLC,* Civ. A. No. 10-6087, 2011 WL 3241356, at *3 (E.D.Pa. July 29, 2011) (dismissing a claim for unjust enrichment where neither party contested the validity of contract). None of these circumstances is present in the case at bar. As discussed above, the MSA provides that the agreement encompassed the entire relationship between the parties. Moreover, the parties do not dispute that the MSA is valid and enforceable, and a copy of the MSA was attached to

ULC's Amended Complaint. The Amended Complaint does not allege that the attached bid proposals are the subject of any of the unpaid invoices at issue. Rather, it appears that all of the disputed invoices relate to services ULC allegedly provided to EXCO when they were working together. As such, ULC has failed to show it is entitled to plead unjust enrichment in the alternative.

For the reasons set forth above, the Court recommends that Defendant's Motion to Dismiss the unjust enrichment claim in Count II of the Amended Complaint be granted and that claim be dismissed with prejudice.[6]

### 2. Claim for Violation of Pennsylvania Contractor and Subcontractor Payment Act

EXCO also moves to dismiss ULC's claim for a violation of the Pennsylvania Contractor and Subcontractor Payment Act, 73 P.S. §501 *et seq.* ("CASPA" or the "Act"). In support, EXCO argues that the allegations in the Amended Complaint do not establish entitlement to relief under Section 505 of CASPA, but rather, consist entirely of conclusory allegations and sweeping legal conclusions. As such, EXCO submits that the Amended Complaint fails to satisfy the federal pleading standards under *Iqbal* and *Twombly*. In response, ULC merely states that at all times, it was acting as a subcontractor for the Defendant contractor on various jobs. Pl.'s Resp. to Second Motion to Dismiss at ¶13(ii) (ECF No. 32).[7]

---

[6] Because the Court has concluded that Plaintiff is not entitled to plead a claim for unjust enrichment as a matter of law, and has already allowed Plaintiff an opportunity to plead additional facts in support of this claim, the Court finds it would be futile to allow Plaintiff another opportunity to amend its complaint.

[7] Although Plaintiff asserts in his response to the Second Motion to Dismiss that it was acting as a subcontractor, the allegations in the Amended Complaint, as well as the MSA and other exhibits attached thereto suggest that Plaintiff was acting as a contractor and EXCO was an owner under the Act. *See* discussion *infra* at 12. The Act defines "subcontractor" as a "person

Under CASPA, an owner is required to pay the contractor "strictly in accordance with the terms of the construction contract." 73 P.S. §505(a). CASPA further provides that if the parties agree to payment terms, that agreement will govern. 73 P.S. §505(c). Under the MSA, the parties agreed that the due date for payment of invoices submitted by ULC is within thirty days after EXCO accepts ULC's invoice as fully complying with all specifications and requirements of the MSA and any work orders or purchase orders. MSA, §III. If any payment to a contractor is not paid within seven days of the due date, then the contractor is entitled to interest, *see* 73 P.S. §505(d), a penalty, *see* 73 P.S. §512(a), and if it is the substantially prevailing party, reasonable attorney fees, 73 P.S. §512(b).

The Act defines "contractor" as the "person authorized or engaged by an owner to improve real property." 73 P.S. §502. "Owner" is defined as the "person who has an interest in the real property that is improved and who ordered the improvement to be made. The term includes successors in interest of the owner and agents of the owner acting with their authority." *Id.* The term "improvement" is defined as, inter alia, "(2) [t]he erection, alteration, demolition, excavation, clearing, grading or filling of real property." *Id.* Under the Act, "real property" means "[r]eal estate that is improved, including lands, leaseholds, tenements and hereditaments, and improvements placed thereon." *Id.* "Construction contract" means "[a]n agreement, either written or oral, to perform work on any real property located within this Commonwealth." *Id.*

EXCO submits that CASPA only applies to improvements to real property, and ULC has not and cannot allege that the alleged services at issue here are "improvements" to "real property" as defined by CASPA. The Court disagrees. The MSA indicates that EXCO required

---

who has contracted to furnish labor or materials to, or has performed labor for, a contractor or another subcontractor in connection with a contract to improve real property." 73 P.S. §502.

the services and goods/equipment/facilities from ULC "in connection with the construction and/or operation of properties and facilities for the exploration for, or the development, production, gathering, treating, processing or transportation of, oil, gas, sulphur or other minerals . . . ." MSA, ¶I. In paragraph 5 of the Amended Complaint, ULC alleges that EXCO is "engaged in the business of exploration, development and operation of oil and gas wells and in the production of oil and gas . . . ." In addition, the invoices attached as Exhibit B to the Amended Complaint show that some of the services performed by ULC included loading, hauling and leveling dirt for well pad (ECF No. 26-2 at 3); and digging ditch for 2 inch pipeline and backfilling the ditch (*id.* at 4). These allegations and exhibits show that some of the services allegedly provided by ULC constitute "improvements" to "real property" as those terms are defined in the Act.

EXCO further argues that Plaintiff has failed to allege any facts to establish that it is an "owner," that Plaintiff is a "contractor" or that the MSA was a "construction contract," as defined by the Act. This argument also lacks merit. It can reasonably be inferred from the MSA that EXCO holds, at a minimum, a leasehold interest in the real property on which it is exploring, developing, producing, processing, and/or transporting oil, gas, sulphur and other minerals. It could not engage in these operations if it (or any of its subsidiaries) did not hold at least a leasehold interest in the property. Moreover, it is clear from the MSA that EXCO was the party who had the authority to order the improvements to the real property, and ULC alleges in the Amended Complaint that EXCO did order such improvements. In addition, the MSA designates ULC as the "contractor" under that agreement, and the MSA, the Amended Complaint, and the exhibits attached thereto, show or suggest that ULC was engaged by the EXCO (plausibly the owner) to provide services constituting improvements to real property. Finally, the MSA here

meets the definition a construction contract under the Act, as it is clearly a written contract for the performance of services on real property located in Pennsylvania.

Accordingly, the Amended Complaint and exhibits thereto allege sufficient facts to show that Plaintiff is entitled to relief under CASPA. Therefore, the Court recommends that EXCO's motion to dismiss Plaintiff's CASPA claim (Count III) be denied.

### 3. Declaratory Judgment Action

Finally, EXCO seeks dismissal of Plaintiff's claim for a declaratory judgment in Count IV of the Amended Complaint because it is duplicative of the breach of contract claim and is inadequately pled. In response to EXCO's argument, ULC submits only that EXCO is the party "who has not paid pursuant to the MSA within the time agreed upon after Plaintiff requested payment thereby coming within the framework of a declaratory judgment action[, and,] alternative pleading is permitted at this stage of the pleadings." Pl.'s Resp. to Second Motion to Dismiss at ¶13(iii) (ECF No. 32 at 3).

The Court agrees with EXCO that the claim for declaratory judgment is duplicative of Plaintiff's breach of contract claim, in that both claims require resolution of the same issue—whether Plaintiff is entitled to payment on, and EXCO is required to pay, the disputed invoices. In support of its claim for a declaratory judgment, ULC alleges that it is entitled to a judicial determination as to its rights and the parties' responsibilities under the MSA and applicable statutes (i.e., CASPA) and payment therein. Am. Compl. ¶53. Consequently, ULC can potentially obtain the full relief it seeks either under its breach of contract claim and or its claim under CASPA, and therefore, will not be prejudiced from the dismissal of its claim for declaratory judgment.

ULC pleaded its declaratory judgment claim under Pennsylvania law, however, such claims are considered procedural in federal court, and therefore, are governed by the federal rules regarding declaratory judgment actions in diversity cases. *Fed. Kemper Ins. Co. v. Rauscher,* 807 F.2d 345, 352 (3d Cir. 1986) (citing 6A J. Moore, MOORE'S FED. PRAC., ¶57.02[5]). Under 28 U.S.C. §2201, a district court is vested with discretionary authority to determine whether to preside over a declaratory judgment action. *State Auto Ins. Cos. v. Summy,* 234 F.3d 131, 133 (3d Cir. 2000); *see also Wilton v. Seven Falls Co.,* 515 U.S. 277, 286 (1995) ("On its face, the [Declaratory Judgment Act] provides that a court "*may* declare the rights and other legal relations of any interested party seeking such declaration.") (quoting 28 U.S.C. §2201(a) (1988 ed., Supp. V). As the Supreme Court opined in *Wilton,* "[i]f a district court, in the sound exercise of its judgment, determines after a complaint is filed that a declaratory judgment will serve no useful purpose, it cannot be incumbent upon that court to proceed to the merits before staying or dismissing the action." 515 U.S. at 288.

In the case at bar, Plaintiff's claim for declaratory judgment serves no useful purpose, for the reasons articulated above. Moreover, some of the relief requested is not declaratory in nature but equitable, and thus inappropriate for a declaratory judgment. For example, ULC requests an order from this Court requiring an escrow fund be created for any payments in dispute. Am. Compl., Action for Declaratory Judgment, Ad damnum cl., ¶A (ECF No. 26 at 11). Moreover, counsel for Plaintiff indicated that he would consider withdrawing his claim for declaratory relief at the status conference on August 26, 2014, *see* ECF No. 34, after the Court indicated that it viewed the claim as duplicative.[8] For all of these reasons, the Court recommends that EXCO's

---

[8] Plaintiff did not, however, file or seek leave to file an amended complaint deleting the claim for declaratory judgment.

motion to dismiss the action for declaratory judgment in Count IV of the Amended Complaint be granted and the claim dismissed with prejudice.

### D. CONCLUSION

For the reasons set forth above, it is respectfully recommended that EXCO's Motion to Dismiss Counts II, III and IV of the Amended Complaint (ECF No. 27) be granted as to Counts II and IV, and denied as to Count III.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Rules of Court, the parties are allowed fourteen (14) days from the date of service of a copy of this Report and Recommendation to file objections. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to file timely objections will constitute a waiver of any appellate rights.

Dated: October 22, 2014					BY THE COURT:


							 s/Lisa Pupo Lenihan
							LISA PUPO LENIHAN
							U.S. Magistrate Judge

cc:	All Counsel of Record
	*Via Electronic Mail*